

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00181-CV

———————————————

IN THE INTEREST OF G.W., A CHILD

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-693377-20

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant A.W. (Father) appeals from the trial court's termination of his parental rights to his daughter, G.W. (Gabi).[1] In two issues, he challenges the evidentiary sufficiency to support the trial court's findings that grounds for termination existed under Texas Family Code Section 161.001(b)(1) and that termination was in Gabi's best interest. *See* Tex. Fam. Code Ann. § 161.001(b). Because Father does not challenge all of the statutory termination grounds found by the trial court, sufficient evidence supports one of the termination grounds, and sufficient evidence supports the best-interest finding, we affirm.

## Background

Gabi was born in December 2020. At her birth, she and her mother both tested positive for methamphetamines and amphetamines. Based on that testing and the Department's investigator's concerns that Father was also a drug user, Gabi was taken into the Department's care and placed with foster parents. The Department filed its original petition for protection of a child, for conservatorship, and for termination, seeking to terminate both parents' parental rights to Gabi if she could not be safely reunited with them. Shortly before trial, Gabi's mother signed an affidavit of relinquishment of her parental rights. After the trial, the trial court signed a judgment finding that grounds for terminating Father's rights existed under Section

---

[1]We use aliases to refer to the child and her family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

161.001(b)(1)(E), (O), and (N); finding that termination was in Gabi's best interest; and terminating Father's parental rights. Father now appeals.

## Discussion

### I. Standard of Review

For the trial court to terminate the parent–child relationship, the party seeking termination—in this case, the Department—must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Texas Family Code Section 161.001(b)(1) and (2) that termination is in the child's best interest. *Id.*; *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

To determine whether the evidence is legally or factually sufficient in parental-termination cases, we must decide whether a reasonable factfinder could form a firm belief or conviction that a termination ground exists and that termination is in the child's best interest. *Z.N.*, 602 S.W.3d at 545; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *see In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). As such, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

3

In reviewing a legal sufficiency challenge, we look at the evidence in the light most favorable to the challenged finding. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but the inferences must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). In reviewing the factual sufficiency of the evidence, on the other hand, we must perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).

## II. Statutory Termination Grounds

In Father's first issue, he argues that the evidence is legally and factually insufficient to support the termination grounds in Section 161.001(b)(1)(D), (E), (F), (M), (Q), and (O). However, the trial court did not terminate Father's rights under Subsections (D), (F), (M), or (Q). The court did, however, terminate under Subsection (N), and Father does not challenge that finding.[2] Only one statutory ground is

---

[2]In one paragraph, Father asserts that the Department had to prove at least one statutory ground under Texas Family Code Section 161.001(b)(1) and then argues generally that "[t]he statutory grounds were not met in this case." But his brief

required to terminate parental rights, and by failing to challenge the trial court's finding under Subsection (N), Father has waived any complaint about the sufficiency of the evidence to support that finding. *See In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at \*10 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing Tex. Fam. Code Ann. § 161.001(b) and *Toliver v. Tex. Dep't of Fam. & Protective Servs.*, 217 S.W.3d 85, 102–03 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). However, because due process and due course of law demand that we address the trial court's Subsection (E) finding when it is challenged regardless of whether other grounds support termination, *see In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019), we nevertheless review the evidence to support that ground.

### A. Endangerment under Subsection (E)

Subsection (E) allows for termination when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct" that endangers the child's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E). "Endanger" in this context "means to expose to loss or injury" or "to jeopardize." *J.F.-G.*, 627 S.W.3d at 312 (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012) (quoting *Boyd*, 727 S.W.2d at 533). However, endangering

contains no argument regarding Subsection (N) and does not mention that subsection. *See* Tex. R. App. P. 38.1(i).

5

conduct need not be directed at the child, nor must the child actually suffer injury. *J.F.-G.*, 627 S.W.3d at 312.

A parent's illegal drug use and its effect on his or her ability to parent may qualify as endangering conduct. *Z.J.*, 2019 WL 6205252, at *11. Further, "[e]vidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent" is evidence that may be used to establish an endangering course of conduct because a child's physical and emotional well-being can be endangered by conduct that "[r]outinely subject[s] children to the probability that they will be left alone because their parent is in jail" or "that subjects a child to a life of uncertainty and instability." *In re J.B.*, No. 14-20-00766-CV, 2021 WL 1683942, at *5 (Tex. App.—Houston [14th Dist.] Apr. 29, 2021, pet. denied) (mem. op.); *see also In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.). However, if the Department relies on the parent's committing an unlawful act to show endangerment, the Department "bears the burden of showing how the offense was part of a voluntary course of conduct endangering [a child's] well-being." *E.N.C.*, 384 S.W.3d at 804.

### B. Analysis

The Department's first witness was Da'Kecia Berry, a permanency supervisor with Our Community Our Kids, an organization that provides conservatorship services for the Department. Because Gabi's mother relinquished her parental rights, Berry's testimony focused primarily on Father. Berry testified to the following facts.

6

- Gabi came into the Department's care after she and her mother tested positive for methamphetamines and amphetamines at Gabi's birth.

- Father had participated in some but not all of the services in his service plan. Father completed his parenting classes and the substance abuse assessment, and he submitted to a psychological evaluation. He did not, however, complete individual counseling.

- Father submitted to random drug testing in January 2021, April 2021, and July 2021, and each test was positive for amphetamine and methamphetamine.

Father was incarcerated in August 2021 and was still incarcerated at the time of trial. During Berry's testimony, the trial court admitted records showing Father's convictions for theft and possession-of-a-controlled-substance offenses.

- Father had previously been convicted in 2017 on two charges of possession of less than 1 gram of methamphetamine, and for each offense he was sentenced to six months' confinement in a state jail facility, running concurrently.

- In 2019, Father was again charged with methamphetamine possession; for that offense, in June 2020, he was placed on deferred adjudication community supervision.

- In August 2021, he was convicted on three charges of theft of property with a value between $100–$750. Two of the offenses had been committed before Gabi's birth but during Mother's pregnancy. The other offense was committed after Gabi's birth and after the Department filed its petition.

- Also in August 2021, Father's June 2020 deferred adjudication was revoked, and the trial court sentenced him to three years' confinement for the possession offense.

On cross-examination, Berry acknowledged that Father could not have used drugs around Gabi after her birth because she was taken into the Department's care directly from the hospital.

7

Father's mother (Grandmother) also testified at trial. Grandmother stated that

- To her knowledge, Father has used drugs for "five or six years";

- Until a few months before trial, Grandmother lived in a house with her common-law husband, and before Father's incarceration, he and Gabi's mother lived in a "nice tent" in the property's backyard;

- Father is incarcerated in a drug treatment facility where he is receiving treatment;

- Father would be paroled in July 2022;

- Father already has a job he can start after his release;

- After Father's release, he will live in a halfway house and will participate in treatment aftercare for two years; and

- Father "is a changed person."

Based on the evidence before the trial court, we hold that a reasonable factfinder could form a firm belief or conviction that Father had endangered Gabi. Father has a history of drug use that has resulted in his incarceration in the past, and he is currently serving time in prison for his drug use. Before his incarceration, he tested positive for methamphetamine multiple times, despite knowing that his parental rights were at stake. He is also serving time for additional criminal offenses, which he committed both while Gabi's mother was pregnant and after the Department's case began. Further, assuming he would be eligible for release in the months after the trial, he would be living in a halfway house and thus could not care for Gabi. Even considering Father's completing part of his service plan and Grandmother's assertion that he has changed, the evidence was factually sufficient—

8

and therefore legally sufficient—to support the trial court's endangerment finding. *See J.B.*, 2021 WL 1683942, at *5; *see In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.) (stating that factually sufficient evidence is also legally sufficient). We overrule Father's first issue.

## III. Best Interest

In Father's second issue, he challenges the evidentiary sufficiency to support the trial court's best-interest finding. Father contends that insufficient evidence supports the finding and the evidence showing his compliance with part of the service plan, his engaging in drug treatment while in custody, Grandmother's social support, and his having a job after his release is contrary to the finding.

### A. Best Interest Factors

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

    (A)    the [child's] desires . . . ;

9

(B)     the [child's] emotional and physical needs[,] . . . now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the [child's] best interest . . . ;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the [parent's] acts or omissions . . . indicat[ing] that the existing parent–child relationship is not a proper one; and

(I)     any excuse for the [parent's] acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807.

These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

**B. Analysis**

The trial court heard testimony from Berry and from Gabi's foster mother about Gabi's current placement. Berry testified that Gabi is doing well with her foster parents; that the foster parents are meeting Gabi's physical, emotional, developmental, financial, and educational needs; and that the Department's permanency plan was adoption by the foster parents. Berry further testified that termination was in Gabi's best interest due to Father's "incarceration and his pattern of positive drug tests."

Gabi's foster mother testified that she and her husband have had Gabi in their care since Gabi was eighteen days old and that Gabi is doing "really well." Gabi is strongly bonded with her foster parents and with their other daughter. The foster parents want to adopt Gabi, and they are open to her having continued contact with Grandmother. Gabi's bond with her foster family and the stability of the foster placement supports the trial court's best-interest finding. *See J.W.*, 645 S.W.3d at 747–48. In contrast, Father was still incarcerated at the time of trial and was not due to be released until after trial, and upon his release would be staying in a halfway house. There was no evidence of when he would be released from the halfway house or that he would have stable housing after that. Further, in determining best interest, the trial court could consider the evidence of Father's drug history and criminal actions before and after Gabi's birth. *See A.C.*, 560 S.W.3d at 631.

Considering the record as a whole, we hold that a reasonable factfinder could form a firm belief or conviction that termination was in Gabi's best interest, that the

11

evidence was therefore factually sufficient to support the trial court's finding, and that the evidence was therefore also legally sufficient. We overrule Father's second issue.

## Conclusion

Having overruled Father's two issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  September 29, 2022